(79 App. Div. 156.)

PEOPLE ex rel. WEINTZ v. BURCH et al.

(Supreme Court, Appellate Division, Second Department. January 23, 1903.)

Appeal from special term, Orange county.

Mandamus by the people, on the relation of Louis Weintz, against John H. Burch and others, forming the common council of the city of Middleton, the board of aldermen, the city itself, and Charles H. Smith, to compel the appointment of the relator as superintendent of streets of said city. From an order granting a peremptory writ, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Thomas C. Rogers, for appellants.
George H. Decker, for respondent.

HIRSCHBERG, J.   The only question presented on this appeal is whether the relator is entitled to a preference in appointment for the office of superintendent of streets of the city of Middletown, as an honorably discharged soldier from the army of the United States in the late Civil War.   He duly submitted to an open competitive examination for the place, under a claim for such preference, and there is no dispute of the fact that he is such honorably discharged soldier.   The proper municipal civil service commission returned to the appointing power, the common council of the city of Middletown, appellants, an eligible list headed by the relator's name as that of a "veteran," and containing the names of two other applicants who passed a higher examination than the relator did, but who were not designated as veterans or as entitled to preference.   One of the other applicants having been appointed, the substitution of the relator is commanded by peremptory mandamus, under the requirement of the order appealed from.

The civil service rules define the term "veterans" as referring to "honorably discharged soldiers and sailors of the army and navy of the United States in the late Civil War who are citizens and residents of this state."   Rule 1, subd. 13.   The term "veteran" has been generally adopted as signifying one of the class entitled to preference in appointment under section 9 of article 5 of the state constitution, and it may be assumed that the appellants so understood it in this instance,—especially in the absence of any statement to the contrary.   The answering affidavit of the appellants asserts that they had no knowledge at the time of the appointment which was sufficient to form a belief as to whether the relator was a veteran, "such as would entitle him to any preference," and claims that the designation was insufficient; but it contains no denial of the fact that he is an honorably discharged soldier of the Union in the Civil War, and no assertion that they did not understand the designation to be intended to certify that fact.

The main contention of the appellants is that the relator, as a veteran, is not entitled to an absolute preference in appointment, because the provisions of section 2 of article 10 of the state constitution, supplemented by the city charter, confer upon them the power of appointment, involving the exercise of judgment and discretion in the selection of a choice, and that any provision of law which requires them to select the relator from the eligible list, irrespective of their choice, is unconstitutional and void.   The claim may be conceded to be quite sound in the abstract, and, if the relator's right to a preference depended solely upon an act of the legislature, it would be controlling in this case.   But it cannot be held that a provision of the state constitution is unconstitutional, yet such a paradoxical holding would be necessary if the decision of the court of appeals in the case of People v. Mosher, 163 N. Y. 32, 57 N. E. 88, 79 Am. St. Rep. 552, upon which the appellants mainly rely, is to be regarded as determining this controversy in their favor.   I briefly considered that case in the case of People v. Stratton (decided herewith) 80 N. Y. Supp. 269, and held that it was not necessarily applicable to a somewhat similar controversy.   The question

is more sharply presented here, because the appellants make no claim that the relator is not in every way fit and desirable as an officer, or even that he would not make as good a street superintendent as any other person on the list. Indeed, beyond the fact that the appellants have concluded to appoint some one else, there is no suggestion in the papers to the effect that they have rejected the relator in the exercise of their sound judgment and discretion, or because of any reason founded on an examination of his relative merits or competency. The sole answer, as I have said, is that he is not entitled to a preference in appointment, and the sole question to be determined is whether the authority referred to constrains this court so to hold. I think the holding would be in direct conflict with the authority, to the extent that it would ignore and disregard the reasoning by which that decision was supported, both in the court of last resort and in the appellate division. In that case the provision of law which was under consideration was that portion of section 20 of the civil service law (chapter 370, Laws 1899), which, in substance, requires the appointing power to select for appointment from an eligible list containing the names of veterans entitled to preference the one standing highest on the list, as entitled to an additional preference in that regard over the other veterans on the list. This was a preference not given by section 9 of article 5 of the constitution, but was conferred wholly by the act of the legislature, and certainly was not in harmony with that part of the constitutional enactment which provides that the preference to be given to veterans shall be "without regard to their standing upon any list." The question in that case came up between two veterans, and it was held not only that the legislative provision was an unconstitutional limitation upon the power of appointment conferred through the legislature on the local authorities by section 2 of article 10 of the constitution, but was unnecessary to carry into effect either the letter or the spirit of the constitutional guaranty to the veterans of a preference. The right of veterans to preference in appointment, regardless of their standing, as declared in the organic law, was in no wise assailed. The right was regarded as complete in letter and spirit, with full choice of selection in the appointing power as between those thus entitled, but with the legislature precluded by constitutional limitations from confining the choice to the person highest graded on the list among the veterans. The reasoning of the courts in that case indicates that there was no thought of impairing the general right of a veteran to a preference. It proceeds upon the theory that all parts of the constitution are to be read together, giving to each its full scope and significance. The part giving preference in appointment to veterans is not to be read without regard to the part giving to the authorities the power of appointment, involving, as the latter necessarily does, the exercise of judgment and the designation of a choice. But it is equally true that that portion of the constitution which confers the power of appointment, with all that its exercise necessarily implies, is to be read in connection with the new provision that, in such appointment, veterans shall have a preference, without regard to their standing, which new pro-

vision is pro tanto a limitation upon the power of appointment; the limitation, however, not being made by a creature of the constitution, but by the constitution itself, and, as such, not to be ignored or disregarded. If, however, the appointing power, without criticism of or objection to the fitness and capacity of a veteran applicant, may deliberately and without any disclosed reason select another, not a veteran, as its avowed choice or preference for office, and no power of review or correction exists in the courts, the veteran has no real preference, but takes his chances of selection with all others; and, if such a result flows from the previous constitutional creation of the appointing power without limitation, then the patriotic provisions inserted in the constitution in 1894 for the benefit and protection of honorably discharged soldiers and sailors never became the law of this state.

I recommend affirmance of the order.

Order affirmed, with $10 costs and disbursements. All concur.