POLICE PROTECTIVE ASSOCIATION, an Unincorporated Association, and Robert Overy, Jimmy Callas, Danny Ziegler, Neal Korbelas, Matt Kesslar, Ken Weimer, Orman Tripp and Robert Green, Appellants (Plaintiffs),

v.

CITY OF ROCK SPRINGS, a Wyoming Municipal Corporation, Appellee (Defendant).

No. 5351.

Supreme Court of Wyoming.

April 30, 1981.

Thomas T. Zollinger, Rock Springs, for appellants.

Jerry M. Murray, City Atty., Rock Springs, for appellee.

Thomas S. Smith, Laramie, filed amicus curiae brief for Wyoming Association of Municipalities.

Before ROSE, C. J.,** McCLINTOCK,*** RAPER,**** THOMAS and ROONEY, JJ.

ROSE, Chief Justice.

The central issue in this appeal is whether the City of Rock Springs may repeal its 40-year-old election decision that it be governed by the state police department civil service statutes. We hold that it may, but we further hold that the City was not free to establish a new civil service or "merit" system through the enactment of an ordinance which did not adopt the applicable provisions of the statutes.

Much of the background of this case is reviewed in an opinion published last year. *City of Rock Springs v. Police Protective Association*, Wyo., 610 P.2d 975 (1980). In March of 1979, Rock Springs Police Chief Russell Hawk hired Larry Levitt as "Commander" of the police department. It was undisputed in the 1980 case that Rock Springs had established a "police department civil service commission" within the meaning of Art. 1, Ch. 5, Title 15 (§§ 15–5–101 through 15–5–122, W.S.1977, now §§ 15–5–101 through 15–5–121, W.S.1977 (July, 1980 pamphlet)). Article 1 contemplates promotion from within the force and imposes various procedural requirements for the appointment of an officer. Levitt had not previously been a member of the

** Chief Justice since January 5, 1981.

*** Retired March 26, 1981, but continued to participate in the decision of the court in this case pursuant to order of the court entered March 30, 1981.

**** Chief Justice at time of oral argument.

force. His appointment offended several members of the police civil service commission, as well as the Police Protective Association (PPA), an unincorporated association of Rock Springs policemen. These parties successfully sued in the district court for an injunction against the appointment and we affirmed.

In apparent response to our decision, the City of Rock Springs passed an ordinance in July of 1979 which repealed the City's 1939 ordinance providing for the establishment of a police civil service commission.

Levitt was then employed as a patrolman and encouraged to take a test for the position of "Commander" along with other patrolmen; he attained the highest score and, in accord with the City's new "merit" system, was hired as "Commander."

The PPA and several individuals (appellants in this case) challenged the City's abolition of the police civil service commission in district court by seeking declaratory judgment and an injunction and—we hold—also charged that the "merit" system was not established in compliance with law. The district court awarded summary judgment in favor of the defendant city.

█ We will hold that while the City was empowered to repeal its civil service ordinance, it must establish any new merit system according to law and that this latter issue was properly before the court for decision.

ABOLITION OF THE POLICE DEPARTMENT CIVIL SERVICE COMMISSION

Wyoming Law Pertaining to Police Civil Service Commissions

In 1939 Rock Springs adopted an ordinance providing for a police civil service commission pursuant to § 2, Ch. 69, 1937 S.L. of Wyoming. The section provided:

"The City Council may establish in each of the incorporated cities and towns in the State of Wyoming, maintaining a paid Police Department and having a population of over four thousand (4,000) according to the latest United States Census, a commission which shall be known as the Police Department Civil Service Commission; provided that when such commission shall have been established, as hereinafter provided, it shall not be abolished except by a majority vote of the qualified electors of the City or Town where the same is established."

In 1949 a district court reserved to us the issue of whether the above statute was in conflict with Art. 3, § 37 of the Wyoming Constitution.[1] We held that the act passed constitutional muster except for the provision that the civil service commission could not be abolished except by popular vote. *Fristam v. City of Sheridan*, 66 Wyo. 143, 206 P.2d 741 (1949). We stated that the provision for repeal by a popular vote was severable and said:

" * * * They [the City authorities] may, as stated, abolish the police civil service commission at any time by repealing the ordinance adopting the provisions of the statute. * * * " 206 P.2d at 746–747.

In 1965 § 15–5–102, supra, was enacted by Chapter 112, § 282, 1965 S.L. of Wyoming.[2] This section provided:

"(a) There is hereby established in each incorporated municipality maintaining a paid fire department and having a population of 4,000 or more, according to the latest United States census a fire department civil service commission.

"(b) The governing body may, in each incorporated municipality maintaining a paid police department and having a population of four thousand (4,000) or more according to the latest United States census establish a police department civil service commission."

---

1. This section provides:
   "The legislature shall not delegate to any special commissioner, private corporation or association, any power to make, supervise or interfere with any municipal improvements, moneys, property or effects, whether held in trust, or otherwise, to levy taxes, or to perform any municipal functions whatever."

2. There are insignificant differences between the wordings of § 15–5–102, supra, and the 1965 session law.

It should be noted that the section makes mandatory a fire department civil service commission for certain specified municipalities but provides that these municipalities "may" establish a police department civil service commission.

From our examination of the Wyoming law relating to police department civil service commissions, we see no reason why the City of Rock Springs is not free to withdraw its earlier election to have a police department civil service commission as specified by the state statutes. Both the statement in *Fristam*, supra, and the use of the word "may" in § 15–5–102(b), supra, support this conclusion.

### Article 13, § 1(a)(iii), Wyoming Constitution

Appellants urge that Art. 13, § 1(a)(iii), Wyoming Constitution, deprives Rock Springs of the authority to repeal its ordinance establishing the police department civil service commission. This section provides:

"(a) The legislature shall provide by general law, applicable to all cities and towns,

\* \* \* \* \* \*

"(iii) For the procedures by which cities and towns may be merged, consolidated or dissolved; provided that existing laws on such subjects and laws pertaining to civil service, retirement, collective bargaining, the levying of taxes, excises, fees, or any other charges, whether or not applicable to all cities and towns on the effective date of this amendment, shall remain in effect until superseded by general law and such existing law shall not be subject to charter ordinance."

Appellants contend that the 1939 Rock Springs ordinance establishing the police department civil service commission is a "law" under our case law, and that therefore the City may not abolish this "law."

For the plaintiffs-appellants to prevail, we would have to conclude that the amendment intended that a city ordinance pertaining to civil service or other topics could only be repealed by the legislature. The district court rejected this argument for a number of reasons, two of which we find sufficient for our discussion.[3]

First, the word "law" in the phrase "existing laws" of § 1(a)(iii) would have to be interpreted to mean "ordinance." However, in § 1(a), the word "law" is unambiguously utilized to denote an act of the legislature while in § 1(b) the word "ordinance" is used to refer to municipal legislation.[4]

Second, § 1 of Art. 13 is popularly known as the home-rule amendment. Section 1(d) provides:

"(d) The powers and authority granted to cities and towns, pursuant to this section, shall be liberally construed for the purpose of giving the largest measure of self-government to cities and towns."

The strained interpretation for which the appellants contend would not be consistent with a liberal interpretation of the powers and authority granted to cities and towns.

"(b) All cities and towns are hereby empowered to determine their local affairs and government as established by ordinance passed by the governing body, subject to referendum when prescribed by the legislature, and further subject only to statutes uniformly applicable to all cities and towns, and to statutes prescribing limits of indebtedness. The levying of taxes, excises, fees, or any other charges shall be prescribed by the legislature. The legislature may not establish more than four (4) classes of cities and towns. Each city and town shall be governed by all other statutes, except as it may exempt itself by charter ordinance as hereinafter provided."

---

3. The district court also concluded that the portion of § 1(a)(iii) of Art. 13 beginning with the phrase, "provided that \* \* \*" is merely a savings clause as described in 16 Am.Jur.2d, Constitutional Law § 67, pp. 385–386 (1979):

"When a new constitution is established, it is customary to insert a provision, commonly known as a savings clause, that all statutes in force and not inconsistent with the new constitution shall continue until amended or repealed by the legislature, although it is generally recognized that such laws remain in force without an express provision to that effect. \* \* \*" (Footnotes omitted.)

4. Section 1(b) provides:

To counter these statutory-construction arguments, the appellants cite *Diefenderfer v. State ex rel. First Nat. Bank of Chicago, Ill.*, 14 Wyo. 302, 83 P. 591, 593 (1906), wherein we said:

" * * * The ordinance upon the subject, having been adopted pursuant to legislative authority, was a 'law' within the meaning of the constitutional provision. It has been generally held that a municipal ordinance is a 'law,' within the meaning of the federal Constitution declaring that no state shall pass any law impairing the obligation of contracts. * * * "

We find no inconsistency between this statement and the district court's reasoning. The *Diefenderfer* statement merely states the obvious: A municipality, in exercising power delegated to it by the state, may not do what the federal Constitution forbids the states to do. *Diefenderfer* does not create a Wyoming rule that the word "law" necessarily embraces "ordinances."

## VESTED RIGHTS AND IMPAIRMENT OF CONTRACT

Appellants argue that even though the power to enact an ordinance usually implies the power to repeal it, there is a controlling exception when the repeal would affect vested rights or contractual obligations. Appellants cite the federal constitutional provision discussed above in *Diefenderfer*, supra. Article I, § 10, United States Constitution. Elsewhere in the brief, appellants argue that the repeal of the civil service ordinance constitutes a deprivation of property without due process.

In his memorandum opinion the district court said:

"Counsel for Plaintiff suggested in oral argument that certain police officers had a vested interest in the police civil service system as it existed prior to July 17, 1979 and that [the repealing ordinance] is invalid because of that vested interest. The Court is uncertain what vested interest is claimed. Is it a vested interest in retention, promotion, salary, retirement or otherwise?

"This issue, if it is an issue, was not raised in the Pleadings and was not addressed in Plaintiff's Brief. Further, the Court was not supplied authority nor did the Court have the benefit of cogent argument.

"I would assume if a given police officer did, in fact, have a vested interest and that vested interest was interfered with by virtue of [the repealing ordinance], he would have recourse for his damages."

In their brief to us appellants dispute the district court's conclusion that the deprivation of "property without due process of law" issue was not properly presented to the district court. Appellants cite their "pleadings, as well as the supporting Affidavits on this issue from the police officers involved."

The Complaint for Injunction and Declaratory Judgment filed by the appellants contains this fleeting mention of the above constitutional issues:

"13. Plaintiff alleges that the promotional opportunities of every present police employee of the City of Rock Springs, and every member of plaintiff association is jeopardized by the actions of defendant, in that the implementation of the 'Personnel Rules of the Rock Springs Police Department' and promotion without reference to the civil service laws would effectively deny them of their property without due process of law."

Appellants' district court brief makes no mention of any constitutional issue concerning impairment of contract or deprivation of property. Appellants' supplemental brief filed in the district court also makes no mention of the federal constitutional issues.

After appellants filed these two briefs, the district court ordered a joint pretrial statement. Appellants responded with a "Pre-Trial Memorandum" in which their counsel represents that it had been impossible to work with the opposing counsel on a joint statement. Appellants' counsel states in this memorandum:

"Plaintiff's claims for declaratory relief and for injunctive relief are premised

upon Article 13, § 1(a)(iii) of the Wyoming Constitution."

At two other points in the memorandum counsel attempts to lay up the legal issues. In none of these three treatments of the legal issue in the pretrial memorandum does appellants' counsel mention the constitutional issues of impairment of contract or deprivation of property without due process of law. Filed with the pretrial memorandum were various affidavits from Rock Springs police officers alleging that the repeal of the ordinance adopting the police department civil service commission had deprived them of property.

We think it abundantly clear that the failure to mention the impairment-of-contract issue or the deprivation-of-property issue in any of counsel's three memoranda to the district court supports the district court's conclusion that these issues were not properly presented to him.

The law is well settled that this court will not consider constitutional issues not presented to the lower court; e. g., *Nickelson v. People*, Wyo., 607 P.2d 904, 907 (1980).

## ESTABLISHMENT OF THE NEW ROCK SPRINGS "MERIT" SYSTEM

■ After Rock Springs repealed its earlier ordinance adopting a police department civil service commission, the City, according to appellants' contentions, adopted a new "merit" system. According to the appellants' district court arguments, the "merit" system is actually a sham under which the mayor and the City Council effectively appoint persons of their choosing to available positions. However, on appeal the appellants make the argument that so long as the City purports to employ a "merit" or civil service type system of hiring, it must follow the state statutes, § 15–5–101, et seq. (which provide definite guidelines for a police department civil service).

The district court held that the above issue was not properly presented to him. He said in his memorandum opinion:

"Plaintiff suggests in it's [sic] Supplemental Brief that by virtue of Ordinance 79–21 Defendant has attempted to legislate in the area of civil service [although they call it a merit system] which in effect usurps the powers of the State Legislature. Again, this issue was not properly raised in the Pleadings nor has there been any showing to the Court that Defendant has adopted its own civil service system." (Bracketed material in original.)

On appeal the appellants urge that the district court was wrong in concluding that their attack of the new "merit" system was not properly presented to the district court.

Again, we must examine the record to test the district court's conclusions.

The abolishment of the existing police civil service and the substitution of the so-called "merit" system were so intertwined in fact and in the record as to completely refute any allegation that the propriety for establishment of the "merit" system was not properly in issue or that appellee lacked notice of it.

The complaint alleges in part:

"7. That at a regular meeting of the Rock Springs City Council of July 17, 1979, Ordinance No. 79–21 repealing Ordinance No. 8–101 was read for the third and final time, a vote thereon was had and the ordinance was passed by a roll call vote of five (5) votes for and three (3) opposed.

"8. That at the same regular meeting of the Rock Springs City Council, July 17, 1979, a resolution was offered and approved, adopting 'Personnel Rules of the City of Rock Springs Police Department,' a copy of which is attached hereto and incorporated herein as Exhibit 'C.'

\*　　\*　　\*　　\*　　\*　　\*

"9. That the ordinance abolishing Civil Service aforesaid and the resolution adopting the 'Personnel Rules of the Rock Springs Police Department' were enacted in bad faith and that the purport of the action in combination was to retain the essence of a civil service system while avoiding the injunction entered in Civil No. 3206 of this Court.

\*　　\*　　\*　　\*　　\*　　\*

"12. Plaintiff alleges that as a matter of law, the readoption of a civil service or merit system immediately following the abolition of civil service nullifies and makes void the ordinance repealing civil service.

"13. Plaintiff alleges that the promotional opportunities of every present police employee of the City of Rock Springs, and every member of plaintiff association is jeopardized by the actions of defendant, in that the implementation of the 'Personnel Rules of the Rock Springs Police Department' and promotion without reference to the civil service laws would effectively deny them of their property without due process of law."

The following were included in the prayer of the complaint:

"2. That the Court enter judgment declaring that the Civil Service Act governs employment, appointment and promotions within the Rock Springs Police Department.

"3. That the Court permanently enjoin defendant from legislating on the subject of civil service in a manner inconsistent with the mandate of the Civil Service Act and Wyoming Constitution Article XIII § 1(a)."

In its brief in support of its motion for summary judgment, appellee recognized as one of the purposes of appellants' action, " * * * to permanently enjoin the governing body of the City from operating except under Police Civil Service Act and the Wyoming Constitution * * *." In appellants' memorandum brief to the district court, 15 pages were devoted to arguing the proposition that "a municipality may not create a civil service system inconsistent with the Wyoming Civil Service Act."

In their pretrial memorandum, appellants included the following among the purposes of their action:

"Alternative declaratory relief sought by plaintiff is a declaration that the adoption of rules and the appointment of a commission to supervise the Rock Springs Police Department must conform in all respects to the provisions of the Wyoming Civil Service Act, W.S. §§ 15–5–101 through 15–5–122, 1977 repub. ed. It is contended by plaintiff that any merit system for the appointment and promotion of police officers, under the supervision of a board or commission, in a city of over 4,000 population, must conform to, and be consistent with, state statutes on the subject."

In such memorandum, they set forth as one of the issues:

"Whether any attempt to create a merit board to govern civil service employees must conform to the general laws of the state?"

On this appeal, appellants listed the same issue as one of the issues on appeal as follows:

"Whether any attempt of a municipality to create a merit board for the governance of its (police) civil servants must conform to the Wyoming Police Civil Service Act?"

Six pages of their brief were devoted to this issue and it was addressed in oral argument.

It cannot be said that appellee was without notice of the issue. The fact that appellee had no response to it is not determinative of the fact of notice. Nor should appellants be forced to again present the issue on appeal. " * * * [I]n the course of orderly procedure, appeals will not be allowed by piecemeal * * *." 5B C.J.S. Appeal and Error § 1825, p. 197.

Proper disposition of this case requires a determination of this issue.

## COMPLIANCE WITH STATE LAW

Section 15–5–101, et seq., supra, pertain to police and fire department civil service. Section 15–5–102(b), supra, provides that:

"(b) The governing body may, in each incorporated municipality maintaining a paid police department and having a population of four thousand (4,000) or more according to the latest United States census establish a police department civil service commission."

The following sections set forth requirements once the commission is established, such as: Composition of commission, qualifications of commissioners, filling of police positions and vacancies in grades of officers, classification of positions, salaries, examinations, method of employment and appointment, cause and method of discharge, layoffs, adoption of rules, etc.

These requirements must be complied with once a civil service system is adopted, regardless of the name by which it is designated, i. e., personnel rules, recruitment rules, merit system, etc. Criminal penalties are even provided in § 15–5–122, supra, for violation of the provisions of the Act.

The provisions of the Personnel Rules for the Rock Springs Police Department—the merit system here contested [5]—are in direct conflict with the provisions of § 15–5–101, et seq., supra, in a number of respects, such as, the composition of the commission, exemption of others than the chief of police from its application, method of employment, removal and demotion, requirements for examinations and promotions, placing many duties and responsibilities of the commission in the chief of police, etc. Such conflict is illegal.

Article 13, § 1 of the Wyoming Constitution, giving "home rule" to cities and towns, exempts "statutes uniformly applicable to all cities and towns" from the authorization given to cities and towns to "determine their *local* affairs and government." (Emphasis added.) Section 15–5–101, et seq. are statutes which are exempt from this provision. They apply to all cities and towns having a population of over 4,000. Article 13, § 1(b) recognizes the authority of the legislature to classify cities and towns into not more than four classes. Reasonable classification of such has long been recognized. *May v. City of Laramie*, 58 Wyo. 240, 131 P.2d 300 (1942).

Additionally, Art. 13, § 1, provides in pertinent part:

"(a) The legislature shall provide by general law, applicable to all cities and towns,

\* \* \* \* \* \*

"(III) \* \* \* provided that \* \* \* laws pertaining to *civil service*, retirement, \* \* whether or not applicable to all cities and towns on the effective date of this amendment [December 12, 1972], shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance." (Emphasis and bracketed material added.)

See *"Laramie Citizens for Good Government" v. City of Laramie*, Wyo., 617 P.2d 474 (1980), reh. denied,[6] regarding limitations of Art. 13, § 1. Provisions of § 15–5–101, et seq. are not repealed or made inapplicable by Art. 13, § 1.

The district court's judgment for appellee upon its motion for summary judgment is reversed and the case is remanded for continued proceedings in accordance with this opinion.

THOMAS, Justice, dissenting.

I must dissent from the conclusions of the majority of the court in this instance. My only concern is with that aspect of the majority opinion which concludes that the summary judgment must be reversed because the adoption of a new "merit" system contravenes the applicable state statutes. The conclusion that it does may well be correct, but in reaching that conclusion I am satisfied that the court has rendered an advisory opinion contrary to well established precedent in this court.

I would affirm the action of the district court in refusing to consider this issue on the ground that the appellants sought (and are now receiving) purely an advisory opinion. I would hold that they do not have standing to pursue this aspect of the case.

---

5. Such was adopted July 17, 1979—the same date that the existing police civil service was abolished—by the City Council, and is an exhibit to the complaint.

6. A discussion concerning the standing of an organization as a real party in interest for the purpose of bringing suit is also contained in *"Laramie Citizens for Good Government" v. City of Laramie*, supra.

This court in declaratory judgment cases has uniformly rejected the furnishing of advisory opinions. *Washakie County School District Number One v. Herschler*, Wyo., 606 P.2d 310 (1980); *Police Protective Association of Casper v. City of Casper*, Wyo., 575 P.2d 1146, 1148 (1978); *Mountain West Farm Bureau Mutual Insurance Company, Inc. v. Hallmark Insurance Company*, Wyo., 561 P.2d 706, 709–710 (1977); *Cranston v. Thomson*, Wyo., 530 P.2d 726, 728–729 (1975); *Retail Clerks Local 187 AFL–CIO v. University of Wyoming*, Wyo., 531 P.2d 884, 887 (1975); and *Brimmer v. Thomson*, Wyo., 521 P.2d 574 (1974). In order to have standing to pursue such a claim, it is necessary to show that past conduct or threatened future conduct invades or will invade a private substantive legally protected right or interest. *White v. Board of Land Commissioners*, Wyo., 595 P.2d 76 (1979); 1 Anderson, Declaratory Judgments, § 32, p. 104 (Harrison Company 1951).

There are a number of cases which, while involving different facts, strongly suggest that "promotional opportunities" are not substantive legally protected rights. These cases support the proposition that an expectancy only is not a legally protected right or interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Davis v. Oregon State University*, 591 F.2d 493 (9th Cir. 1978); *Stebbins v. Weaver*, 537 F.2d 939 (7th Cir. 1976), cert. denied 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Blair v. Board of Regents of State University and Community College System of Tennessee*, 496 F.2d 322 (6th Cir. 1974); *Johnson v. University of Pittsburgh*, 435 F.Supp. 1328 (W.D.Pa. 1977); and *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa. 1976).

In *Gaballah v. Johnson*, 629 F.2d 1191 (7th Cir. 1980), the court had before it for review a case in which the plaintiff contended that he had been denied promotion opportunities which he asserted he was entitled to in accordance with the merit promotion program of Downey Veterans Administration Hospital. The court said at 629 F.2d 1202:

"Regarding the five non-promotions, the evidence in the record shows that Gaballah had no protected right to be promoted under the Downey Merit Promotion Program. No [sic] does Gaballah have a property interest in any particular form of consideration for promotion. For if a non-tenured college teacher could assert no property interest in the decision whether to rehire him for a position he already held, *Bd. of Regents v. Roth*, 408 U.S. 564, 577–78, 92 S.Ct. 2701, 2709, 2710, 33 L.Ed.2d 548 (1972), Gaballah has no such interest in the filling of positions he has never held. * * * "

Of similar tenor is *Sherman v. Behner*, 58 F.R.D. 70 (C.D.Cal. 1973), in which the court held that the denial by the Personnel Department of the City of Pasadena of a certification to Sherman to take the examination for Principal Engineer (Electrical) did not deprive him of any rights or privileges cognizable under 42 U.S.C. § 1983.

While I concede that it is permissible for an organization to appear as a real party in interest (*"Laramie Citizens for Good Government" v. City of Laramie*, Wyo., 617 P.2d 474 (1980)), the association cannot assert any greater rights than the individuals whom it represents. The individuals in this instance all claim to be currently employed by the City of Rock Springs as police officers. Consequently their right to employment as police officers is not in issue. I do not understand that they complain of deprivation of promotion prior to the bringing of this action but are premising their claim entirely upon future rights. Since it is my opinion that these appellants had no standing as plaintiffs to assert a future right to promotion as a basis for attacking any "merit" system, the district judge correctly refused to consider the issue. I would affirm the summary judgment in all respects.